# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdisalam Wilwal, and Sagal Abdigani, individually and on behalf of their minor children, M.O., N.W., A.W., and A.M., | Civil No. 17-2835 (DWF/DTS) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Kirstjen Nielsen, Secretary of the Department of Homeland Security; Kevin McAleenan, Acting Commissioner of U.S. Customs and Border Protection, in his official capacity; Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; Derek N. Benner, Acting Executive Associate Director of Homeland Security Investigations, U.S. Immigration and Customs Enforcement, in his official capacity; Jefferson B. Sessions, Attorney General of the United States, in his official capacity; Christopher A. Wray, Director of the Federal Bureau of Investigation, in his official capacity; Charles H. Kable, IV, Director of the Terrorist Screening Center, in his official capacity; and the United States of America, | |
| Defendants. | |

---

Hugh Handeyside, Esq., and Hina Shamsi, Esq., American Civil Liberties Union Foundation; Teresa J. Nelson, Esq., John B. Gordon, Esq., and Ian Bratlie, Esq., American Civil Liberties Union Foundation of Minnesota; and Randall Tietjen, Esq., Amira A. ElShareif, Esq., and Sarah E. Friedricks, Esq., Robins Kaplan LLP, counsel for Plaintiffs.

Erica McDonald, United States Attorney, and Erin M. Secord, Assistant United States Attorney, United States Attorney's Office; and Chad A. Readler, Esq., John R. Tyler,

Esq., Michael L. Drezner, Esq., James G. Touhey, Jr., Esq., Rupert Mitsch, Esq., and Paul D. Stern, Esq., United States Department of Justice, counsel for Defendants.

## INTRODUCTION

This lawsuit arises out of a family's detention at a United States-Canada border crossing. Plaintiffs Abdisalam Wilwal, Sagal Abdigani, and their four children ages 5, 6, 8, and 14 (collectively, "Plaintiffs") bring this lawsuit claiming their detention was unlawful and assert various constitutional, Administrative Procedure Act ("APA"), and Federal Tort Claims Act ("FTCA") claims against the Government. This matter is before the Court on the Government's motion to dismiss. (Doc. No. 37.) For the reasons discussed below, the Court grants the Government's motion to dismiss Mr. Wilwal's substantive due process claim. The Court otherwise denies the Government's motion.

## BACKGROUND

Unless otherwise noted, the facts set forth are drawn from Plaintiffs' amended complaint (Doc. No. 25 ("Am. Compl.")), and accepted as true for the purposes of considering the motion to dismiss. Plaintiffs are United States citizens residing in Eagan, Minnesota. (Am. Compl. ¶¶ 2, 26.) On March 30, 2015, Plaintiffs were returning to Minnesota from a trip to Regina, Saskatchewan. (*Id.* ¶¶ 26, 28.) At the checkpoint in Portal, North Dakota, U.S. Customs and Border Protection ("CBP") officers detained Plaintiffs for over ten hours because Mr. Wilwal's name appeared on a terrorism-related watchlist maintained by the Terrorist Screening Center ("TSC"). (*Id.* ¶¶ 34, 37, 52-84.)

## I. Plaintiffs' Allegations

On March 27, 2015, Plaintiffs drove from their home in Eagan, Minnesota, to visit relatives in Regina, Saskatchewan. (*Id.* ¶ 26.) At the border crossing in Portal, North Dakota, Canadian border officers told Mr. Wilwal that their records indicated that Mr. Wilwal might face additional questioning when attempting to reenter the United States. (*Id.* ¶ 27.) When Plaintiffs returned around 6:00 a.m. on March 30, they presented a CBP officer with the family's U.S. passports and birth certificates. (*Id.* ¶¶ 28-29.) After a few minutes, CBP agents approached Plaintiffs' van with their guns drawn and directed at the van carrying the parents and four young children, and ordered Mr. Wilwal out of the van. (*Id.* ¶¶ 31-32.) The agents handcuffed Mr. Wilwal and escorted him into the station. (*Id.* ¶¶ 32-33.) While escorting Mr. Wilwal into the station, one of the CBP agents accused him of being involved in terrorism. (*Id.* ¶ 34.) Mr. Wilwal asked the agent why he made that accusation; the agent responded, "We have information." (*Id.*)

Inside the station, the agents took Mr. Wilwal into a room, sat him in a chair, and left him handcuffed. (*Id.* ¶ 35.) Around 10:30 a.m., and without any food or water, Mr. Wilwal passed out on the floor of the room where he was being detained. (*Id.* ¶ 52.) After paramedics evaluated Mr. Wilwal, the agents changed the position of the handcuffs so that Mr. Wilwal's arms were in front of his body. (*Id.* ¶ 53.) The agents also gave Mr. Wilwal water. (*Id.*)

Around 3:00 p.m., the agents informed Mr. Wilwal that HSI officers had arrived from Minot, North Dakota. (*Id.* ¶ 56.) Beginning around 4:00 p.m., the HSI officers

questioned Mr. Wilwal for approximately 45 minutes.  (*Id.* ¶ 57, 61.)  The HSI officers denied Mr. Wilwal's requests for an interpreter and a lawyer.  (*Id.* ¶ 57.)  The HSI officers asked Mr. Wilwal if he is Muslim, whether he is Sunni or Shia, and whether he attends a mosque.  (*Id.* ¶ 59.)  Additionally, the HSI officers questioned Mr. Wilwal about Plaintiffs' trip to Canada.  (*Id.* ¶ 60.)  Around 4:40 p.m., after being detained over 10 hours, with no explanation, the HSI officers told the agents that they could remove Mr. Wilwal's handcuffs and that he could leave the station.  (*Id.* ¶ 62.)

Ms. Abdigani and the four young children were also detained for over ten hours. (*Id.* ¶ 65.)  While the agents escorted Mr. Wilwal into the station, they directed Ms. Abdigani to park the van outside the border station.  (*Id.* ¶¶ 66-67.)  The agents then told Ms. Abdigani to leave her cell phone in the van and directed Ms. Abdigani and the children into the station.  (*Id.* ¶¶ 67-68.)

After approximately one hour, Ms. Abdigani asked an agent if she could retrieve her cell phone from the van and contact family or friends.  (*Id.* ¶ 71.)  The agent denied the request.  (*Id.*)  Ms. Abdigani also asked if the children could go home to Eagan, either via her driving them or her brother-in-law coming to pick them up.  (*Id.* ¶ 72.)  The agent denied that request also, stating:  "You're all detainees, including the children."  (*Id.*)

Around 11:00 a.m., Ms. Abdigani used her 14-year-old son's, M.O., cell phone to call 911.  (*Id.* ¶¶ 74-75.)  M.O. had not been told to leave his cell phone in the van.  (*Id.* ¶ 74.)  Ms. Abdigani told the 911 dispatcher that she and her family were being held against their will at the border station and were afraid for their safety.  (*Id.* ¶ 75.)  One of the agents then took the cell phone, and after approximately ten minutes, convinced the

911 dispatcher to not send assistance. (*Id.*) After the 911 call, the agents conducted

pat-down searches of Ms. Abdigani and M.O. (*Id.* ¶¶ 76-79.) To search M.O., the agents

took him into a separate room, patted him down, and then ordered him to take off his

clothes for a strip search. (*Id.* ¶ 77.) M.O. refused to take off his clothes, and neither he

nor Ms. Abdigani consented to the searches. (*Id.* ¶¶ 77-78.)

Apart from asking Ms. Abdigani to write something in Somali, the agents never

questioned Ms. Abdigani and the children, nor gave them a reason for being detained.

(*Id.* ¶¶ 69-70.) Plaintiffs were released and left the station just after 4:40 p.m. (*Id.* ¶ 84.)

On March 31, 2015, the same day that Plaintiffs arrived home, Mr. Wilwal and

Ms. Abdigani went to the FBI and DHS offices to report what had happened to them at

the border. (*Id.* ¶¶ 85-86.) An employee at the DHS office said she would get back to

them with more information if possible. (*Id.* ¶ 86.) Two or three weeks later, an

administrative staff member at the DHS office left Mr. Wilwal a voicemail stating that

the incident at the border likely occurred because Mr. Wilwal's name appeared on a

terrorist watchlist. (*Id.* ¶ 86.)

## II.     Statutory and Regulatory Framework

The Terrorist Screening Center ("TSC"), "a multi-agency center administered by

the FBI," has the duty to manage and operate the Terrorist Screening Database (the

"Watchlist"). *See* Terrorist Screening Center, https://www.fbi.gov/about/leadership-and-

structure/national-security-branch/tsc (last visited September 25, 2018). "The watchlist is

a single database that contains sensitive national security and law enforcement

information concerning the identities of those who are known or reasonably suspected of

being involved in terrorist activities." *Id.* "The TSC uses the watchlist to support front-line screening agencies in positively identifying known or suspected terrorists who are attempting to . . . enter the country." *Id.* The procedure for submission of identity information for inclusion on the Watchlist is known as the "watchlist nomination process." Terrorist Screening Center, *Frequently Asked Questions* at 2 (last updated Jan. 2017) ("TSC FAQ"), https://www.fbi.gov/file-repository/terrorist-screening-center-frequently-asked-questions.pdf. Government agencies submit identity information for individuals who may qualify for inclusion and submit those nominations to the National Counterterrorism Center ("NCC"). *Id.* If the NCC finds the information credible and sufficient, then it passes the information to the TSC for final verification and entry into the Watchlist. *Id.*

Congress required the Transportation Security Administration ("TSA") to provide a redress system for individuals who have questions concerning, or want to appeal their alleged Watchlist status. *Id.*; *see also* 49 U.S.C. § 44903(j)(2)(C)(iii)(I). Because of this mandate, DHS established and administers the Traveler Redress Inquiry Program ("DHS TRIP"), through which individuals can submit a redress inquiry. 49 C.F.R. § 1560.205(b). Upon receipt of a redress inquiry, TSA "will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response." 49 C.F.R. § 1560.205(d).

Mr. Wilwal and Ms. Abdigani submitted DHS TRIP redress inquiries, but neither has received a final response from DHS TRIP. (Am. Compl. ¶ 87.)

## III. Procedural History

On February 24, 2017, Plaintiffs submitted administrative tort claims to CBP based on the injuries sustained during their detention. (*Id.* ¶ 92.) Plaintiffs amended their claims on July 11, 2017. (*Id.*) In mid-September 2017, CBP denied all of Plaintiffs' administrative claims.

Plaintiffs brought this suit on July 13, 2017 and filed an amended complaint on October 12, 2017. Mr. Wilwal asserts the following claims against the Government: (1) unconstitutional seizure and excessive use of force under the Fourth Amendment (Counts I and II); (2) violation of Mr. Wilwal's procedural and substantive due process rights under the Fifth Amendment (Count IV and V); (3) violation of the APA (Count VII); and (4) battery, for which Plaintiffs assert the Government is liable under the FTCA (Count X). (Am. Compl. ¶¶ 94-96, 98-102, 105-07, 112-13.) Sagal Abdigani, M.O., N.W., A.W. and A.M. separately assert a claim for unconstitutional seizure under the Fourth Amendment (Count III). (*Id.* ¶ 97.) Plaintiffs collectively assert the following claims: (1) violation of the APA (Count VI); (2) false arrest/imprisonment and assault, for which Plaintiffs assert the Government is liable under the FTCA (Counts VIII and IX). (*Id.* ¶¶ 108-09, 110-11.)

Plaintiffs seek a declaratory judgment that "Defendants have violated Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution and the Administrative Procedure Act[.]" (*Id.* at 26.) Plaintiffs also seek injunctive relief (1) "enjoining Defendants from arresting, seizing, searching, or interrogating Abdisalam Wilwal because of his placement on a terrorism-related watchlist"; (2) enjoining

Defendants from arresting, seizing, detaining, searching, or interrogating Sagal Abdigani, M.O., N.W., A.W., or A.M. because of their association with Abdisalam Wilwal";

(3) "requiring Defendants to provide Abdisalam Wilwal with notice of the reasons for his placement on the master watchlist and a meaningful opportunity to contest his continued retention on it";  (4) requiring Defendants to remedy the constitutional and statutory violations [alleged in the amended complaint], including the removal of Abdisalam Wilwal from the master watchlist"; and (5) requiring Defendants to expunge from government databases or otherwise destroy all information unlawfully obtained from Plaintiffs[.]"  (*Id.* at 26-27.)  The Government now moves to dismiss Plaintiffs' Amended Complaint in its entirety.  (Doc. Nos. 37 ("Motion"), 38 ("Gov't Memo.").)

## DISCUSSION

### I.      Legal Standard

#### A.      Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction.  To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction.  *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).  "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case."  *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its

averments.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations

omitted).  When a defendant brings a facial challenge—a challenge that, even if truthful,

the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the

pleadings alone, and the non-moving party receives the same protections as it would

defending against a motion brought pursuant to Rule 12(b)(6).  *Id.* (citation omitted).  In a

factual challenge to jurisdiction, the court may consider matters outside the pleadings,

and the non-moving party does not benefit from the safeguards of Rule 12(b)(6).  *Id.* at

728-30 n.4 (citations omitted) (holding that on a Rule 12(b)(1) motion challenging

subject-matter jurisdiction, the court "has authority to consider matters outside the

pleadings").

### B.      Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in

the complaint to be true and construes all reasonable inferences from those facts in the

light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.

1986). In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City

of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to dismiss

may consider the complaint, matters of public record, orders, materials embraced by the

complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*,

186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### C. Rule 12(b)(7) and Rule 19

A court reviewing a motion to dismiss under Rule 12(b)(7) "accept[s] the complaint's allegations as true" and may consider matters beyond the pleadings. *Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 227 (D. Minn. 2015). The party seeking dismissal bears the burden of demonstrating that the complainant failed to join a necessary party to the lawsuit under Rule 19. *Id.*

## II. Standing

As a preliminary matter, the Government argues that Plaintiffs lack Article III standing, claiming that "[a] single, allegedly delayed border crossing . . . does not provide Plaintiffs with standing to seek future injunctive and declaratory relief." (Gov't Memo. at 8.) Specifically, the Government argues that Plaintiffs' "allegations are insufficient to establish a certainly impending future injury" (*id.* at 11), and that Plaintiffs must allege more than "a vague desire to travel internationally at some point in the future" (*id.* at 12).

Because Article III standing is jurisdictional, the Court first considers the Government's

standing argument. *See Spokeo v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016).

"The party invoking federal jurisdiction bears the burden of establishing"

standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden corresponds

with the degree of evidence required at the relevant stage of litigation. *Id.* "Where . . . a

case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'

each element" of standing. *Spokeo*, 136 S. Ct. 1540 at 1547 (quoting *Warth v. Seldin*,

422 U.S. 490, 518 (1975)). However, at this stage, "general factual allegations of

injury . . . may suffice." *Lujan*, 504 U.S. at 561; *see also Iowa League of Cities v. E.P.A.*,

711 F.3d 844, 869 (8th Cir. 2013).

Article III permits federal courts to intervene only in "Cases" or "Controversies."

U.S. Const., art. III., § 2, cl. 1. The standing doctrine serves to "identify those disputes

which are appropriately resolved through the judicial process." *Susan B. Anthony List v.

Driehaus*, __ U.S. __, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560, 112 S. Ct. 2130 (1992)). To have standing, Plaintiffs must

demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Spokeo*, 136 S. Ct. at 1547; *see Lujan*, 504 U.S. at 560-61. The

injury-in-fact requirement requires Plaintiffs to demonstrate that they have experienced

"an invasion of a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal

quotation marks and citations omitted). If Plaintiffs lack standing, "the district court has

no subject-matter jurisdiction" and must dismiss the case. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

A plaintiff seeking injunctive relief must show that he "faces a threat of ongoing or future harm." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Likewise, a plaintiff's speculation that a future injury may occur is not sufficient to warrant injunctive relief. *Id.* at 497. A plaintiff must show that the threat of injury is "real and immediate." *Id.* at 496.

The Supreme Court has explained that "[w]hen the suit is one challenging the legality of government action or inaction" and "the plaintiff is himself an object of the action (or forgone action) at issue . . . , there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62; *see also Iowa League of Cities*, 711 F.3d at 871. To establish redressability, however, the plaintiff must show that it is "more than merely speculative that the relief requested would have any effect to redress the harm to the plaintiff." *Young Am. Corp. v. Affiliated Comput. Servs., Inc.*, 424 F.3d 840, 845 (8th Cir. 2005) (quoting *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998)).

Plaintiffs' allegations, taken as true at this stage of the case, plausibly allege concrete injuries-in-fact. Numerous courts have adopted a presumption that "a traveler's subjection to heightened searches while entering the United States can be an indicator

than an individual is on a terrorist watchlist." *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013); *see also Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992-93 (9th Cir. 2012). Here, the CBP officers detained Mr. Wilwal and his family for nearly eleven hours when they crossed the border in March 2015. (Am. Compl. ¶¶ 34, 37, 52-84.) Plaintiffs allege that one of the CBP officers accused Mr. Wilwal of being involved with terrorism based on "information" available to the CBP officers. (*Id.* ¶¶ 33-34.) Plaintiffs also allege that after contacting the FBI and DHS, a DHS employee left a voicemail for Mr. Wilwal explaining that CBP officers likely detained Plaintiffs because Mr. Wilwal's name appeared on a terrorism watchlist. (*Id.* ¶ 86.) Finally, at this time, the Government neither admits nor denies that Mr. Wilwal is on a watchlist. Taken together, these allegations support an inference that Plaintiffs were subjected to a heightened search because Mr. Wilwal's name appeared on the watchlist.

The Court also concludes that Plaintiffs' allegations of future harm are sufficiently concrete despite omitting specific plan or dates of future travel. Courts do not require plaintiffs to engage in international travel when they have experienced difficulties at the border and reasonably expect the same difficulties when returning to the United States from future travel. *See Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990) (finding "a reasonable expectation that [the plaintiff] will exercise his right to travel," even though the plaintiff did not want to risk being denied entry to the United States a second time"); *Mohamed v. Holder*, 266 F. Supp. 3d 868, 875 (E.D. Va. 2017) ("Plaintiffs' decision not to engage in international travel because of the difficulties he reasonably expects to encounter upon return to the United States is sufficient to demonstrate standing."). Here,

Plaintiffs have expressed a desire to travel internationally, but fear that they will experience difficulties like those they experienced on March 30, 2015. It is reasonable to infer from Plaintiffs' allegations that these Plaintiffs will engage in international travel again in the future, especially given their previous trip to Canada and their specific desire to visit family again in Canada. *See Suhre v. Haywood Cty.*, 131 F.3d 1083, 1088 (4th Cir. 1997) ("[P]ast injury [i]s probative of likely future injury."); *Alasaad v. Nielsen*, Civ. No. 17-11730, 2018 WL 2170323, at *11 (D. Mass. May 9, 2018) (concluding the plaintiffs sufficiently alleged actual or imminent injury based on the plaintiffs' "prior travel abroad and professional backgrounds that might warrant future travel").

Additionally, Plaintiffs have plausibly alleged that expungement of their information would afford some redress for the injuries caused by their detention. Specifically, Plaintiffs have plausibly demonstrated that the Government continues to maintain digital records from the March 30, 2015 detention, including a digital recording of the HSI officers interrogating Mr. Wilwal and records obtained from a search of M.O.'s cell phone. (Am. Compl. ¶ 90, Ex. A.)[1] Contrary to the Government's argument, courts recognize that expungement of records obtained during an illegal search and seizure is a valid equitable request for relief. *Tabbaa v. Chertoff*, 509 F.3d 89, 96 (2d Cir. 2007). This is particularly appropriate at the motion to dismiss stage because "the potential avenues for redress depend on how a particular plaintiff's injury shows itself" and include a "range of available remedies." *Hassan v. City of N.Y.*, 804 F.3d 277,

---

[1] The Court will consider the ICE Report of Investigation, which Plaintiffs attached as Exhibit A to the Amended Complaint. *See Porous Media Corp.*, 186 F.3d at 1079.

293-94 (3d Cir. 2015).  At this early stage of the litigation, the Court will exercise its equitable discretion to deny the Government's motion to dismiss on the basis that Plaintiffs lack standing to seek expungement.  *See United States v. Meyer*, 439 F.3d 855, 861 (8th Cir. 2006) (describing the district court's authority to consider expungement requests based on unlawful arrests or convictions).

In sum, the Court concludes that Plaintiffs have adequately established standing to seek prospective and injunctive relief.  With respect to each claim, Plaintiffs allege particular, concrete harms to their legally protected interests which are caused by Defendants and likely to be redressed by the requested relief.

## III.    Subject Matter Jurisdiction

The Government also argues that the United States Courts of Appeals have exclusive jurisdiction to consider Plaintiffs' challenge to the adequacy of the redress procedures provided by DHS TRIP.  (Gov't Memo. at 14.)  Section 46110 provides the courts of appeals with exclusive jurisdiction to review TSA orders.  49 U.S.C. § 46110(a).  "[T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order . . . ."  *Id.* § 46110(c).  Courts have concluded, however, that TSC--not TSA or DHS—is the "sole entity with . . . the authority to remove" individuals from the Watchlist.  *Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2012); *see Ege v. Dep't of Homeland Sec.*, 784 F.3d 792, 795 (D.C. Cir. 2015) (quoting *Latif*).  And although the Eighth Circuit has not addressed this question directly, it has observed that review under Section 46110 is "quite narrow" and "is limited to TSA's final orders." *Robinson v. Napolitano*, 689 F.3d 888, 892 (8th Cir. 2012).

15

Here, Plaintiffs challenge the redress process relating to Mr. Wilwal's alleged placement on the Watchlist. Plaintiffs argue that because the redress process is controlled by TSC and not TSA, Section 49110 does not deprive this Court of jurisdiction. The Court agrees. Plaintiffs seek "notice of the reasons for [Mr. Wilwal's] placement on the master watchlist." (Am. Compl. at 27.) As explained by the Ninth and D.C. Circuits:

> Because "TSC—not TSA—actually reviews the classified intelligence information about the travelers and decides whether to remove them from the List" and "established the policies governing that stage of the redress process," we agree that [the court of appeals] cannot, on section 46110 review, provide relief to an individual included . . . in the [Watchlist] by "simply amending, modifying, or setting aside TSA's orders or by directing TSA to conduct further proceedings."

*Ege*, 784 F.3d at 795-96 (quoting *Latif*, 686 F.3d at 1128-29) (internal citations omitted). The main case the Government relies on, *Mokdad v. Lynch*, does not compel a different result. 804 F.3d 807, 811-13 (6th Cir. 2015). In *Mokdad*, the Sixth Circuit concluded that a procedural challenge to the DHS TRIP redress process constituted a challenge to a final TSA order, and that TSA was therefore "a required party to [the plaintiff's] litigation about the adequacy of the redress procedures." *Id.* at 811-12. The Sixth Circuit declined to address, however, "whether § 46110 would deprive the district court of subject-matter jurisdiction over [the plaintiff's] claims challenging the adequacy of the redress process, including any broad constitutional claims, if he were to file a new suit naming TSA as a defendant." *Id.* at 812. Unlike the plaintiff in *Mokdad*, here, the Plaintiffs have named DHS as a defendant, of which TSA is a component. The concerns present in *Mokdad* are therefore not present here.

Based on the foregoing, the Court concludes that Section 46110 does not deprive this Court of subject-matter jurisdiction.

## IV. Rule 12(b)(6) Analysis

### A. Fourth Amendment – Unconstitutional Seizure (Counts I & III)

The Government first moves to dismiss Plaintiffs' claims alleging that the March 30, 2015 detention "constituted an unreasonable seizure in violation of the Fourth Amendment to the U.S. Constitution." The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior" due to the government's interest in protecting "the integrity of the border" from the entry of unwanted persons and contraband into this country, as well as individuals' lessened privacy interests when crossing international borders. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537-40 (1985); *see also United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (noting the government's "paramount interest" in protecting its territorial integrity from "unwanted persons and effects"). As a result, there is a recognized border-search exception to the Fourth Amendment's warrant and probable cause requirements, one that applies both to actual borders and their functional equivalents, such as international airports, and extends to both incoming and outgoing travelers. *See, e.g.*, *United States v. Udofot*, 711 F.2d 831, 839-40 (8th Cir. 1983).

Under the border-search exception, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538; *see also Udofot*, 711 F.2d at 839 ("[T]he Government's sovereign authority to protect itself justifies a warrantless search without probable cause of persons crossing the United States' border and of their personal effects."). Because the Government has a "longstanding right . . . to protect itself by stopping and examining persons and property crossing into this country," such searches "are reasonable simply by virtue of the fact that they occur at the border." *Flores-Montano*, 541 U.S. at 152-53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Although the Supreme Court has declined to decide whether non-routine border searches—those that highly intrude upon a person's dignity and privacy or involve the destruction of property—require some level of suspicion, numerous lower courts have concluded that such searches must be supported by reasonable suspicion. *See id.* at 152, 155-56; *Montoya de Hernandez*, 473 U.S. at 541 n.4 ("[W]e suggest no view on what level of suspicion, if any, is required for nonroutine border searches such as strip, body cavity, or involuntary x-ray searches."); *United States v. Molina-Gomez*, 781 F.3d 13, 19 (1st Cir. 2015) (explaining that non-routine border searches, such as those that are highly intrusive or destructive, require reasonable suspicion); *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) ("Although routine border searches of a person's belongings are made reasonable by that person's decision to enter this country, more invasive searches, like strip searches, require reasonable suspicion.").

Whether a border search qualifies as routine or non-routine "often depends on the degree of invasiveness or intrusiveness associated with the search." *Molina-Gomez*, 781 F.3d at 19 (quotation omitted). As with *Terry* stops, the duration and force involved in a detention are two factors in evaluating whether a detention at the border is non-routine. *See Montoya de Hernandez*, 473 U.S. at 541-42; *see also United States v. Place*, 462 U.S. 686, 709 (1983); *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) ("[A]n investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force."). Courts also consider "the degree of fear and humiliation that the police conduct engenders," whether law enforcement "isolat[ed] [the suspect] from others," and whether the suspect was handcuffed. *See United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994).

Here, the Court concludes that Plaintiffs' allegations concerning the detention state a plausible claim for a violation of Plaintiffs' Fourth Amendment rights to be free from unconstitutional seizure. The Court notes that Plaintiffs' allegations—in particular, that CBP agents approached Plaintiffs' van with their guns drawn and ordered Mr. Wilwal out of the van, handcuffed Mr. Wilwal in front of his crying children, and subsequently detained the entire family for nearly 11 hours—could lead a reasonable factfinder to determine that Plaintiffs' detention was unreasonable.

Based on the foregoing, the Court denies the Government's motion to dismiss Counts I and III of the Amended Complaint.

**B.      Fourth Amendment – Excessive Force (Count II)**

The Government moves to dismiss Mr. Wilwal's claim alleging that the CBP

agents used excessive force in detaining him.  The Court evaluates excessive force claims

under an objective-reasonableness test.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

In determining whether the use of force is "reasonable" under the Fourth Amendment, a

court must balance "the nature and quality of the intrusion on the individual's Fourth

Amendment interests" against the government's interests at stake.  *Id.* at 396 (citation

omitted).  The reasonableness of the use of force must be judged from the "perspective of

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See*

*id.*  The proper application of the Fourth Amendment "requires careful attention to the

facts and circumstances of each particular case, including the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Id.*

Courts also consider the result of the force in analyzing a claim for excessive

force.  *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).  Assuming

without deciding that a plaintiff must demonstrate some minimum level of injury, the

Eighth Circuit has ruled that the necessary level of injury required for a Fourth

Amendment excessive force claim is "actual injury."  *Lambert v. City of Dumas*, 187

F.3d 931, 936 (8th Cir. 1999); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995).

The Eighth Circuit has held that the following examples constitute "actual injury":

(1) "bruises and a facial laceration"; (2) "bruised knees and elevated blood pressure";

(3) "posttraumatic stress disorder"; or (4) a "single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf." *Lambert*, 187 F.3d at 936 (citations omitted). However, the Eighth Circuit has ruled that "a de minimus . . . injury is insufficient to support a finding of a constitutional violation." *Crumley*, 324 F.3d at 1007. Thus, not every push or shove violates the Fourth Amendment. *Id.*

Here, the Court concludes that Mr. Wilwal's allegations are sufficiently plausible to state an excessive-force claim. As noted above, when arresting Mr. Wilwal, the CBP agents drew their guns on Mr. Wilwal, his wife, and his four young children even though Mr. Wilwal made no attempt to flee or resist the agents. The agents then handcuffed Mr. Wilwal and left him in handcuffs for nearly 11 hours. Mr. Wilwal also plausibly alleges that he was injured when he passed out in the detention room and had to receive medical attention. Under a totality of the circumstances, a reasonable factfinder could determine that the Government's use of force was unreasonable. *See Graham*, 490 U.S. at 396 (noting that courts should evaluate excessive-force claims by paying "careful attention to the facts and circumstances of each particular case").

Accordingly, the Court denied the Government's motion to dismiss Count II of the Amended Complaint.

### C. Procedural Due Process (Count IV)

The Government moves to dismiss Mr. Wilwal's claim that the Government's refusal to provide him with any notice of the reasons or basis for his placement on the Watchlist violates his Fifth Amendment procedural due process rights. The Government specifically argues that Mr. Wilwal has failed to allege deprivation of a protected interest

and that Mr. Wilwal only suffered a delay at the border, which is not a cognizable

violation of the right to travel.

"To prevail on a Fourteenth Amendment . . . procedural due process claim,

a plaintiff 'must first demonstrate that he was deprived of life, liberty or property by

government action.'" *Triemert v. Wash. Cty.*, Civ. No. 13-1312, 2013 U.S. Dist. LEXIS

179067, at *31-32 (D. Minn. Nov. 18, 2013) (quoting *Orr v. Larkins,* 610 F.3d 1032,

1034 (8th Cir. 2010)), *adopted by* 2013 U.S. Dist. LEXIS 178294 (D. Minn. Dec. 19,

2013); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth

Amendment's Due Process Clause protects persons against deprivations of life, liberty, or

property; and those who seek to invoke its procedural protection must establish that one

of these interests is at stake.  A liberty interest may arise from the Constitution itself, by

reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation

or interest created by state laws or policies" (citations omitted)).  A plaintiff must then

show that the government deprived him of that interest without due process of law.

*Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011).

In the Amended Complaint, Mr. Wilwal alleges that the Government deprived him

of his "liberty interest in travel, entry into the United States, and freedom from

unconstitutional seizure."  (Am. Compl. ¶ 100.)  For the reasons explained in the Court's

analysis of Mr. Wilwal's unconstitutional-seizure claim, the Court concludes that

Mr. Wilwal has plausibly alleged that the Government deprived him of his liberty interest

in being free from unconstitutional seizure.  The Court further concludes that Mr. Wilwal

has sufficiently alleged, at the motion to dismiss stage, that the Government's Watchlist

22

redress procedures do not provide him constitutionally sufficient due process. Consequently, the Court denies the Government's motion to dismiss Count IV of the Amended Complaint.

### D.     Substantive Due Process (Count V)

The Government next moves to dismiss Plaintiffs' substantive due process claim, arguing that Mr. Wilwal's alleged placement on the watchlist does not implicate a fundamental right and is not conscience-shocking. (Gov't Memo. at 25.) Plaintiffs argue that they have a fundamental right to reenter the United States upon returning from international travel.

The Eighth Circuit has held that to state a claim for violation of substantive due process, a plaintiff "must demonstrate *both* that the [government's] conduct was conscience-shocking, *and* that the [government] violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017) (internal quotation marks and citation omitted).

Mr. Wilwal bases his substantive due process claim on his right to international travel. But the right to international travel is not a fundamental right: "The constitutional right of interstate travel is virtually unqualified. By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment . . . [and] can be regulated within the bounds of due process." *Califano v. Torres*, 435 U.S. 1, 5 n.6 (1978) (citations omitted). The

United States Supreme Court has stated that "the freedom to travel outside the United States must be distinguished from the right to travel within the United States," and is "subordinate to national security . . . considerations."  *Haig v. Agee*, 453 U.S. 280, 306 (1981).  Although Mr. Wilwal has alleged facts that a reasonable factfinder could determine shocks the conscience—specifically, drawing guns on a family with four young children despite no evidence that the family was resisting or attempting to flee--the right to international travel is not a fundamental right, and therefore, Mr. Wilwal's claim fails to satisfy the test set forth in *Karsjens*.  Because the Government's actions do not implicate a fundamental right, Mr. Wilwal has failed to state a claim for substantive due process violations.

Based on the foregoing, the Court dismisses Count V of the Amended Complaint.

### E.        Administrative Procedure Act (Counts VI and VII)

The Government next moves to dismiss Plaintiffs' claims that the Government's policies and redress procedures related to the Watchlist violate the APA.  Under the APA, the reviewing court must affirm an agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375 (1989); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The court must consider whether the defendant considered the relevant factors and whether the defendant made a "clear error of judgment."  *Motor Vehicles,* 463 U.S. at 43.  This standard of review is narrow and accords agency decisions a high degree of deference. *Sierra Club v. Envtl. Prot. Agency*, 252 F.3d 943, 947 (8th Cir. 2001).

24

In Count VI, "Plaintiffs allege that the Government's existing policies permitted the CBP and HSI officers to carry out the unreasonable seizures that Plaintiffs challenge." (Doc. No. 45 at 48.) The Government seeks dismissal, arguing in part that Plaintiffs have failed to identify specific agency action that they are challenging. Plaintiffs respond that it is "unsurprising" that they "are not aware of the precise contours of those policies . . . given government secrecy." (*Id.*) Although Plaintiffs' allegations that the policies are arbitrary, capricious, or otherwise not in accordance with law are quite general and non-specific, the Court must, on a motion to dismiss, construe all facts in the light most favorable to Plaintiffs. The Court finds that Plaintiffs have sufficiently alleged that the confluence of standards, criteria, and use of the Watchlist among law enforcement and other agencies was "otherwise not in accordance with law" such that it led to the harm Plaintiffs suffered on March 30, 2015.

In Count VII, Mr. Wilwal alleges that the Government's "refusal to provide [Mr.] Wilwal with a constitutionally adequate process for obtaining redress for his placement on the master watchlist," "failure to provide Mr. Wilwal with notice of the reasons for his placement on the watchlist, and a meaningful opportunity to contest his continued retention on it," and "placing and retaining him on the master watchlist" violate the APA. (Am. Compl. ¶¶ 105-07.) The Government argues that Mr. Wilwal's claim "is coextensive with his fourth claim of relief alleging a violation of his procedural due process rights and fails for the same reasons." (Gov't Memo. at 30.) The Court disagrees. For the same reasons set forth in the Court's procedural due process analysis, the Court finds that Mr. Wilwal has plausibly alleged that the Government's redress

procedures do not satisfy due process and are therefore "contrary to constitutional right," and "otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A), (B).

Based on the foregoing, the Court denies the Government's motion to dismiss Counts VI and VII of the Amended Complaint.

### F.      Federal Torts Claim Act (Counts VIII, IX, and X)

The Government moves to dismiss Plaintiffs' tort claims, arguing that Plaintiffs have failed to state actionable tort claims under North Dakota law.  Generally, the United States is immune from suit; however, by passing the FTCA, the Federal Government consented to be sued in certain circumstances.  *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 671 (8th Cir. 2008).  The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  The FTCA applies "to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" as a result of the "acts or omissions of investigative or law enforcement officers of the United States Government."  *Id.* § 2680(h).  The applicable tort law is "the law of the place where the act or omission occurred." *Id.* § 1346(b)(1).  Because the detention took place in North Dakota, North Dakota's tort law applies.

Under North Dakota law, to state a claim for false arrest, plaintiffs must plausibly allege that "they were subject to total restraint against their will by means of physical barriers or by threats of force which intimidated them into compliance with orders." *Copper v. City of Fargo*, 905 F. Supp. 680, 700 (D.N.D. 1994).  The Government

concedes that Plaintiffs were totally restrained, but asserts that the CBP and HSI agents acted within their "plenary authority" to conduct searches at the border. (Gov't Memo. at 31-32.) For the same reasons set forth in the Court's unconstitutional-seizure analysis, the Court concludes that a reasonable factfinder may determine that the agents exceeded their "plenary authority" to conduct border searches and that Plaintiffs' detention was unreasonable.

A defendant commits battery under North Dakota law when "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *Wishnatsky v. Huey*, 584 N.W.2d 859, 861 (N.D. Ct. App. 1998). Similarly, under North Dakota law, a defendant commits assault if "he willfully causes bodily restraint or harm to another human being or places another human being in immediate apprehension of bodily restraint or harm." *Binstock v. Fort Yates Pub. Sch. Dist. No. 4*, 463 N.W.2d 837, 840 (N.D. 1990). In either case, the act must be unjustifiable to constitute battery or assault. *Id.*

The Government argues that Plaintiffs have failed to state valid claims for relief because Plaintiffs do not allege any unjustifiable conduct on the part of the CBP and HSI agents. The Court disagrees. A reasonable factfinder, considering the totality of the circumstances, could find that the CBP agents' conduct was excessive and unreasonable. Specifically, Plaintiffs plausibly allege that all Plaintiffs' "identification documents were valid," "the family members were not carrying any illegal items," "there were no reasons to suspect that any member of the family was carrying illegal items on their persons or in

the vehicle," and that Mr. Wilwal was not fleeing or resisting the agents. (Am. Compl. ¶¶ 29, 32.) Nevertheless, the agents drew their guns on the entire family, yelled at the Mr. Wilwal to not "use weapons," ordered Mr. Wilwal out of the van at gunpoint, and handcuffed Mr. Wilwal. (*Id.* ¶¶ 31-32.)

Based on the foregoing, the Court denies the Government's motion to dismiss Counts VIII, IX, and X of the Amended Complaint.

## V.     Necessary Parties

Finally, the Court considers the Government's argument that TSA is a necessary party to this lawsuit, and that because Plaintiffs failed to join TSA, Rule 12(b)(7) mandates dismissal of Counts Four and Seven. (Gov't Memo. at 22.) Rule 19(a) designates a person a required party if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Under Rule 19, courts focus on the relief available between the parties rather than "the speculative possibility of further litigation between a party and an absent person." *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (internal quotation marks and citation omitted).

The touchstone of the Rule 19 analysis in this case is whether "meaningful relief" is available to the Plaintiffs.[2] *Henne v. Wright*, 904 F.2d 1208, 1212 n.4 (8th Cir. 1990). Third-parties are not necessarily required parties under Rule 19 merely because they are involved in conduct underlying a plaintiff's claims. *See Equal Emp't Opportunity*

---

[2]      Rule 19 also provides two other bases for finding an individual or entity to be a required party. *See* Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii). The Government does not appear to assert that these provisions apply in this case, and the Court concludes that they do not.

*Comm'n v. Cummins Power Generation, Inc.*, 313 F.R.D. 93, 99-101 (D. Minn. 2015). If the defendant is independently liable for the plaintiffs' claims, the court may properly conclude that it can accord complete relief in the absence of such third parties. *See id.*

As noted in the Court's analysis of subject-matter jurisdiction, TSC—not TSA—controls the material aspects of Plaintiffs' suit concerning Mr. Wilwal's alleged placement on the Watchlist. TSC is responsible for the final review of information received through the watchlist nomination process. Once that information is verified, TSC bears the responsibility of adding an individual to the Watchlist. Finally, TSC is tasked with reviewing individuals' concerns regarding watchlist status, including making determinations about whether to keep a person on the watchlist. Based on the foregoing, the Court can afford complete relief to Plaintiffs because TSC is named as a defendant.

However, the Court observes that even if some of the relief it would order implicates TSA, then the presence of DHS as a defendant is sufficient to satisfy Rule 19 requirements. TSA is a component of DHS, and consequently, DHS can implement any relief for which TSA is responsible.

Accordingly, the Court denies the Government's motion to dismiss on the basis that Plaintiffs' did not name TSA as a defendant.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that the Government's Motion to Dismiss (Doc. No. [37]) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      The Government's Motion is **GRANTED** with respect to Plaintiffs' Fifth

Claim for Relief alleging a violation of Plaintiffs' substantive due process rights.

Plaintiffs' Fifth Claim for Relief is **DISMISSED WITH PREJUDICE**.

2.      The Government's Motion is **DENIED** in all other respects.


Dated:  September 27, 2018          s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge